Field *vs.* Thornton.

---

### No. 50.—George Field, *vs.* Dozier Thornton, in error.

Another judge, than the one who presided on the trial of the cause, may preside on the motion for a new trial. It is desirable, however, unless prevented by providential cause, to submit the brief of the testimony to the judge who tried the cause, to be revised and approved of by him.

A case upon a *new trial,* after a verdict by a *petit jury,* or a confession of judgment, upon the *first trial,* is in the nature of *an appeal,* and is to be regulated by the rules of practice which are applicable to appeals ; and either of the parties litigant may make *any* amendment of the declaration or answer they may deem necessary.

A notarial certificate, which states that a draft was presented at maturity, and payment demanded and refused for want of funds, and that *due notice* of the *non-payment* was given on the same day to all the parties concerned, is sufficient notice of the *dishonor* thereof.

The owner or holder of negotiable paper may bring an action upon it, in the name of a person having no interest in it.

As a general rule, it is true, that suits should be brought by the persons having the *legal interest* in contracts ; but in the case of negotiable notes, suits may be brought in the name of persons having no such interest. They may sue as trustee for the persons having the real interest.

The question of title, in negotiable paper, is one which the defendant will not be permitted to raise ; unless it is made to appear that it is necessary for the purposes of his defence.

The facts of this case, and the errors assigned, are set forth in the opinion delivered by the Supreme Court, to which the reader is referred.

JOHN SCHLEY, for the plaintiff in error.

1st. The court erred in deciding to hear and determine the motion for a new trial, in this case, which was tried before his Honor Judge Hill, presiding in said court at the time, and to whom the brief of all the testimony in said case had not been submitted—had not undergone his supervision, and had not been agreed to by the counsel, and cited to this point 61st rule of the Superior Courts.—2 *Tidd's Prac.* 914.

2d. The court erred in deciding, that the defendant's counsel, at the trial term of the case, after the same was called for trial, could file a plea to the merits, containing new and distinct matter of defence, which subject matter of defence existed before the commencement of the action, if it ever existed, and relied upon *Hotchkiss*, 570, 572, as authority to this point.

3d. The court erred in deciding, that a demand and refusal of payment of a bill of exchange, and notice of the non-payment thereof to the defendant, is not equivalent to a dishonor of the bill, and notice thereof to the defendant; and submitted the following authorities to this point:—*Sheal* vs. *Britt*, 1 *Pick. Rep.* 401; *Mills* vs. *Bank U. S* 11 *Wheaton's Rep.* 431; *Smith* vs. *Whiting*, 12 *Mass. Rep.* 6; *Story on Bills*, 301 and 380;' *Conroy* vs. *Warner*, 3 *Johns. Cas.* 259 to 265; *Reedy* vs. *Seixas*, 2 *Johns. Cas.* 337.

4th. The court erred in deciding, that under a plea setting forth that the bill sued on was not the property of plaintiff, but was the property of a third person, the defendant would be permitted to prove the sayings of the plaintiff; that the said bill belonged to a third person, then and before the commencement of the action; and cited the following authorities to this point:—*Duncan* vs. *Spear*, 11 *Wend. R.* 54; 5 *Barn. and Adol.* 909, 1098; 4 *Adol. and Ellis*, 870; *Peacock* vs. *Rhodes*, *Douglass*, 636; *Conroy* vs. *Warner*, 3 *Johns. Cas.* 259 to 265; 1 *Johns. Cas.* 169.

HENRY L. BENNING, for the defendant in error.

*By the Court—*LUMPKIN, Judge.

This action was brought in the Superior Court of Muscogee county, by George Field against Dozier Thornton, upon a bill of exchange for fifteen hundred dollars, dated at Apalachicola, and drawn by Harper and Holmes upon William H. Harper, of Columbus, Georgia; payable to Dozier Thornton, endorsed by him to Jonathan A. Hudson, and by Hudson to Field, the plaintiff. The bill not being paid at maturity, was protested for non-payment, and due notice thereof given to all the parties concerned. The notarial certificate, filed in the clerk's office, at the appearance term of the cause, as authorized by the statute, proved that payment of the paper was demanded at the Bank of Columbus, and refused for want of funds, and that on the evening of the same day *due notice of the non-payment thereof* was given to the drawers and endorsers.

The defendant pleaded the general issue; and further, that said bill, at the commencement of the suit, was and still continued to be the property of the Southern Life Insurance and Trust Company, a corporation created by the Governor and Legislative Council of the Territory of Florida; and that said body, being insolvent, had fraudulently used the name of the plaintiff in said suit, instead of their own, to prevent the defendant from pleading his just sets-off against the said concern. And further, that said company, at the time they placed the paper in

the hands of the plaintiff to be sued in his name, had suspended cash payments for their debts, and thereby forfeited their franchises, and ceased to exist, and that consequently the transfer to the plaintiff was void.

At the trial term of the action, judgment was confessed to the plaintiff by the counsel of the defendant, for the debt, with *interest* and costs. And the defendant, being dissatisfied, claimed to appeal; and not being able to give security, made affidavit that he had a good and meritorious ground of defence, and was unable to give security; whereupon the court directed, that the defendant be permitted to appeal without paying costs and giving security, as required by law. At the next succeeding term, the appeal was dismissed, on the ground that the defendant had no right to appeal, under the act of 27th December, 1842; passed to enable parties, plaintiffs or defendants in any court in this State, to appeal, without paying costs and giving security, as now required by law, on certain conditions therein mentioned. This case was instituted before the enactment of the law, and by the terms of it, it was applicable only to those *to be commenced thereafter.*

The defendant then moved the court for a *new trial,* upon several grounds therein stated and verified by affidavit, which was granted. At May Term, 1846, the cause was tried by a special jury, who returned a verdict for the whole amount of the bill, with costs, Judge Hill presiding. Some days thereafter, Judge Hill left the bench and went home, promising to return and hold the court another week for Judge Alexander. During the absence of Judge Hill, a motion for a new trial, with a brief of testimony, as far as it went, was submitted to, and signed by, plaintiff's counsel, who, being compelled to leave town, procured the services of another attorney, to attend to and argue the said motion before Judge Hill, when he should return to hold the court. Judge Hill did return, and preside a week or ten days more during the term; but no effort was made to call up said motion, nor was a brief of the testimony submitted to him for his revision and approval. Judge Hill having finally left the court, the motion for a new trial was called up, when counsel for plaintiff objected to Judge Alexander's hearing and determining said application; because a brief of *all* the testimony had not been agreed upon by counsel, or been reviewed and sanctioned by the judge who tried the cause; and that therefore Judge Alexander could not judicially know the facts necessary to a correct determination of the motion, and that the party should have made the application to the judge who tried the issue, unless prevented by providential cause.

Plaintiff's counsel having positively refused to enter into any agreement, as to the evidence in the case, Judge Alexander allowed the defendant's counsel to make oath to the facts, so far as agreed to, and that the brief contained in substance all the testimony adduced on the trial. Plaintiff's counsel declined to take issue upon the truth of this statement. Plaintiff's counsel was asked if he knew of any facts, not included in the brief. He demurred to being thus catechised, as to what he was pleased to denominate an *ex parte* proceeding; adding, that if he were to consent to answer, his memory was too indistinct to

enable him to do so. Judge Alexander then determined to entertain the motion; whereupon plaintiff's counsel excepted.

Argument was then heard upon the motion for a new trial, which contained the following grounds, to wit:

1st. Because the court refused to receive at this term the plea of defendant of notice to plaintif to sue the acceptor of said draft, and his failure to do so for more than three months thereafter.

2d. Because the court permitted the plaintiff to use in evidence a notarial certificate or protest, to prove notice of the dishonor of said draft, and because the court charged the jury that a notice to the defendant of the non-payment of said draft was equivalent to a notice of the dishonor thereof.

3d. Because there was no evidence before the jury of the dishonor of said draft, or of the notice of its dishonor to defendant.

4th. Because the court refused to permit the defendant to prove, or to examine a witness to prove, that he had heard plaintiff say, that said draft was still the property of the Southern Life Insurance and Trust Company, and was so at the time of the commencement of said suit.

The court having heard and considered the foregoing motion, ordered a new trial in said case to be had at the next term, upon the 1st, 2d, and 4th grounds therein set forth; whereupon plaintiff's counsel excepted.

I am of the opinion, that under the circumstances I should have refused the rule. There had been a confession of judgment, and a verdict of a special jury, in favor of the plaintiff; and the defendant assigned no excuse for failing to make the application to Judge Hill. In England, so much respect is paid to the opinion of the judge, who tried the cause, that if he express himself satisfied with the verdict, it is usual not to grant a *new trial.* And, on the other hand, if he be dissatisfied, it is pretty much a matter of course to grant it; especially when it depends in any degree upon the evidence. Still as to the *legal right* of Judge Alexander to entertain the motion for a new trial, there can be no doubt. Nothing is more common than for a different judge from the one presiding at the trial, to preside on the application for a rehearing. Before hearing the rule discussed, it would have been better, at any rate, to have had the brief of the testimony submitted to Judge Hill, who tried the cause, and approved by him; especially as there was no providential cause intervening to prevent. Even where the facts are argued upon, this is the safer course; yet we cannot see sufficient error in the proceeding to authorize the interference of this court.

Let us now examine the three grounds upon which the new trial was granted. The first reason assigned was, on account of the refusal of the court which tried the cause to receive the plea of defendant of notice to plaintiff to sue the acceptor of said draft, and his failure to do so for more than three months thereafter.

By the act of 1831, it is declared, "that in every case which may thereafter arise where the security or endorser of any promissory note, or other instrument, after the same has or shall become due, has required, or shall thereafter require, the holder thereof to proceed to collect the same, and the said holder has not proceeded, or shall not pro-

ceed, to do so within three months after such notice or requisition, the endorser or security shall be no longer liable." And it was under the promise of this statute that the defendant sought to get in his plea.

The error of the court below in rejecting this defence originated, it would seem, in the idea that this was still a trial at *common law*, and not in the nature of an *appeal.* The judiciary of 1799, in requiring pleas to be filed on or before the *last day* of the *first term*, has reference, evidently, to the *first trial* of the cause ; and the refusal to admit the answer was predicated upon that provision of the statute.

How stands the cause, then, when a new trial has been granted after a verdict by the *petit jury* ? Our law, giving concurrent jurisdiction to the common law side of the superior courts, enacts, that they "shall have power to correct errors and grant *new trials* in any cause depending in any of the said Superior Courts, in such manner and under such rules and regulations as they may establish, and according to law, and the usages and customs of courts." Further : " *All new trials shall be had by a special jury, to be taken from the grand-jury list of the county."*— *Prin. Dig.* 432.

It is obvious, then, that a case on a *new trial* is in the nature of *an appeal.* One important reason which operated on the Assembly no doubt was, to give a party who was unable to appeal the benefit of a *special jury* trial on the second hearing. This identical case illustrates and enforces the necessity and propriety of this construction. Here the defendant had entered an appeal, under the special order of the judge, which had to be dismissed upon motion, as not coming under the act of 1842 ; and then the court granted a *new trial*, as it were *in lieu thereof.*

It is material to settle this preliminary point, as it is the pivot upon which the judgment of the court turns in disallowing the defence.

On the *appeal*, either of the parties litigant may make *any* amendment of the declaration, or *answer*, they may deem necessary. At the first term of the appeal, it is good cause of continuance that the party desires to make a substantial amendment, unless the opposite party shall permit it to be done *instanter.* And, under the direction of the court, a substantial amendment may be made *on the appeal* either of the declaration or *answer*, *even after the case has gone to the jury.*—*Hotchk.* 943, 950. These are admirable provisions in our rules, and the only regret is that they do not go further. *O, si sic omnia!* In allowing amendments, courts have been of late more liberal than formerly. We have many salutary statutes upon the subject. We still lack, however, one great masterpiece of legislation, which will allow any and all amendments to be made, either at common law, or on the appeal, in matters of form or of substance ; due regard being always had to the rights and interests of the opposite party.

Upon the *first* ground, therefore, in the *rule*, we have no doubts whatever that the court below was right in granting a new trial.

On the third assignment, that the court erred in deciding that *due notice* of the non-payment of a bill of exchange was not equivalent to notice of the dishonor of the bill, we are with the plaintiff in error.

It seems to be conceded that no particular form of notice is necessary, and that the great object of the notice is to put the party on his guard who is to be affected by it. The notarial certificate states that *due notice*

*of the non-payment was given.* It may be fairly insisted that this includes notice of the demand, and refusal on the part of the acceptor. But even if the notice came actually short of this, and only informed Thornton of the fact that the bill had not been paid at maturity, and had been protested on that account, that was enough to put him on the look-out, and he could easily have acquired all the other knowledge necessary for his safety.

As to what notices of the dishonor are, and what are not, sufficient in form, there are a great variety of decisions, not easily reconcilable with each other. The *earliest* cases insist upon a good deal of strictness ; *the latter are far more liberal, and founded upon more just and equitable considerations.*—Story on Bills, p. 338, *note.* In general it may be stated that no particular language or form is indispensable to be used. It is sufficient if it contains a true description of the bill, so as to identify it ; that it states that it has been presented for acceptance, and has been dishonored, and protested for non-acceptance ; and that the holder, or other party sending the notice, looks to the party to whom the notice is sent for indemnity and satisfaction. *Indeed, these statements need not appear in positive or express words ; but it will be sufficient if they arise, by fair and reasonable implication, from the language used.*—Ib. sec. 301.

The reporter, in the marginal note to the case of *Hartley* vs. *Richard Jesson Case, the younger,* (4 *Barn. and Cress.* 339,) lays it down, that a notice of the dishonor of a bill of exchange must contain an *intimation* that payment has been refused by the acceptor. Here, then, was a full and positive statement of *non-payment.*

The same expression is used by Chief Justice Tindal, in *Solarte* vs. *Palmer,* in the Exchequer chamber, (7 *Bingh.* 550,) " The notice should convey an *intimation* to the party to whom it is addressed that the bill is in fact dishonored."

In *Gurgeon* vs. *John Smith,* (6 *Adolphus & Ellis,* 501,) in an action by the endorsee of a bill of exchange against the drawer, the following notice of *dishonor* was held sufficient : " Bill," &c., " drawn by you, is this day returned with charges, to which your immediate attention is requested ;" signed by the endorsee. Counsel argued, upon the authority of *Hartley* vs. *Case,* which was not only unanimously confirmed in the Exchequer chamber, but sustained on appeal to the House of Lords, *that the notice ought to contain an express statement, both that the bill had been dishonored, and that the party giving the notice intends to look to the defendant for payment.* Lord Denman, C. J. " This is clearly *the effect of the notice in this case ;*" and the other judges, Littledale, Pateson and Coleridge, concurred.

Chancellor Kent, in his *Commentaries,* (vol. 3, sect. 44, p. 108, 4th ed.,) lays down the principle, that the notice must specify that the bill is *dishonored,* for the reason, that the drawer may secure his claim against the acceptor, and the endorser against the maker. He admits, however, that no precise form of notice is necessary, and *that it is sufficient to state the fact of non-payment ; and that it is not necessary to state expressly, for it is justly implied, that the holder looks to the endorser.* And this doctrine is maintained in the broadest terms, in some of the leading adjudications in this country. I need only to refer to *Mills* against *United States Bank,* (11 *Wheaton's Rep.* 431,) where the court

Field vs. Thornton.

decided—Mr. Justice Story delivering the opinion—" that it was not necessary that the notice should contain a formal allegation, that it was demanded at the place where it was payable. *It is sufficient if it state the fact of the non-payment of the note, and that the holder looks to the endorser for indemnity.*"

Here the certificate recites that the bill was presented, and payment refused for want of funds, and that, on the evening of the same day, the notary gave *due notice of its non-payment to all the parties concerned.* And, I repeat, the fair implication is, that the notice contained the fact of demand and refusal. But if it did not, and only informed the defendant of the *non-payment* of the bill at maturity, the necessary inference was, that the note had been *presented* and *dishonored*, otherwise it would not have been protested for non-payment, and he notified thereof. No mercantile or business man could doubt the meaning intended to be conveyed by this paper. It would be attended with the utmost inconvenience and mischief, if technical precision was required in such cases. In the opinion of the court, therefore, this notice was sufficient.

The last ground taken, in the rule for a new trial, and sustained by the court, was, because the judge who tried the cause refused to permit defendant to prove, or to examine a witness to prove, that he heard plaintiff say that said draft was still the property of the Southern Life Insurance and Trust Company, and was so at the time of the commencement of said suit. The necessity of considering this point, will likely be avoided by amending the pleadings on the next trial. And the doctrine which it involves has been already examined, to some extent, and passed upon at this term, in the case of Lawson and Nisbet. We there held, that the title of the plaintiff, as the holder of negotiable paper, could not be questioned, unless justice to the defendant made it necessary. Here the pleadings present no issues, which would justify a departure from the position assumed. The plaintiff, Field, derives his title to the draft, sued on by a regular series of endorsements, from the drawee, Dozier Thornton. It is true, that the defendant pleads, and offers to prove, that the legal title is not in the plaintiff; yet he has filed no set-off against the true owner, or any other defence, in support of which his testimony could, by any possibility, be made available.

This point was presented, in all of its length and breadth, in *Guernsey* vs. *Burns and Graves.*—25 *Wend. Rep.* 411. There the plaintiff declared, *in assumpsit*, on the common money-counts, and attached to the declaration a copy of a note, made by the defendant, bearing date 5th October, 1839, for the sum of $400, payable three months after date, to the President, Directors, and Company of the Bank of Western New York, at their banking-house, or to *bearer.* The defendant pleaded—1st, *non-assumpsit;* and, 2d, that they never undertook or promised to pay the plaintiff any sums of money whatever, directly; and never became, and are not, at the time of pleading, liable to pay him any money, for any cause or consideration whatever, unless he is the owner and lawful bearer of a certain promissory note, made by them, &c., (describing the note sued on,) which note, they say, was, at the time it fell due, and still is, the property of the said president, &c.,

Field *vs.* Thornton.

traversing that the plaintiff was or is the lawful bearer or owner of the note. To this plea the plaintiff replied, and the parties went to trial. After the note was read in evidence, the defendant read a stipulation, signed by the plaintiff's attorney, that, on the trial of the cause, he would admit that the *beneficial interest*, in the promissory note in controversy, was, at the time of the commencement of the suit, and on the 30th April, 1840, (the date of the trial,) continued to be in the Bank of Western New York ! The plaintiff then proved, that, prior to the commencement of the suit, he was, and still continued to be, president of the Bank of Western New York, and that the note in question was sued under an arrangement with the bank, that he should, in his own name, sue and collect the negotiable notes in which the bank was *beneficially interested*. The jury, under the direction of the judge, found a verdict for the plaintiff, and the defendant moved a new trial. By the court—*Nelson*, *C. J.* " The note is *payable* to bearer, and of course transferable by delivery ; and a person thus holding it has the *legal interest*, and *may maintain the suit*. It is true that the replication sets out, that the plaintiff is the lawful owner and bearer, *whereas the property of the note is in the bank ;* but, as between the plaintiff and the defendants, the plaintiff is, in judgment of law, the owner, and they are precluded from disputing it; unless the possession is *mala fide*, and was working some prejudice to them, *they have no concern with that inquiry.*"

I have extracted the foregoing case entire—pleadings, proof and decision. No one can fail to perceive its entire parallelism with the one before the court. The only difference is, that the note in the one is payable to bearer, and the draft in the other is endorsed to the plaintiff.

The previous case, of *Gage* vs. *Kendall*, (15 *Wend.* 640,) is still more strikingly analogous, if possible. Kendall declared, in the court below, on a promissory note made by Gage, payable to William Castle or bearer. The defendant pleaded the *general issue*, and gave notice, with the plea, that he would prove on the trial that the plaintiff, at the commencement of the suit, had no title to, or interest in, the note declared on, but had transferred the same to one Shankland, who was the owner and holder thereof; and that the suit was commenced without the knowledge, consent or authority of the plaintiff. On the trial, the defendant *offered* to *prove* the facts set forth in his plea. The evidence was objected to, and *rejected* by the court. The defendant excepted. The plaintiff obtained a verdict; upon which judgment was entered. The defendant sued out a writ of error:

*Per Curiam.*—" The question is, whether the fact that the holder and owner of a negotiable note, having prosecuted such note in the *name* of a *stranger*, without his knowledge or consent, is a bar to a recovery in the name of such nominal plaintiff ?"

" Perhaps this question cannot be better answered than it has been by this court in *Lovell* vs. *Evertson*.—11 *John. Rep.* 52. The note being endorsed in blank, (*in this case payable to bearer*,) the owner had a right to fill it up with what name he pleased ; and the person whose name was so inserted would be deemed, on record, as the legal owner ; and if not so in fact, he could sue as trustee for the person having the real interest. *But the defendant could have no concern with that question. He was responsi-*

Field *vs.* Thornton.

*ble to the person whose name was so inserted in the blank endorsement.* It is true, as contended for by the plaintiff in error, that suit should be brought by the person having the legal interest in the contract; *but in the case of negotiable paper, a suit may be brought in the name of a person having no interest in the contract. He may sue as trustee for those who are interested.* But why should the defendant give himself the trouble to investigate the plaintiff's title ? He owes the money to some one. A recovery in this case, with proper averments, might be pleaded in bar of a new suit, in favor of any other person. The defendant is not deprived, in such suit, of any defence which he may have as against the real owner. *There is, in principle, no objection to a suit on a promissory note in the name of a nominal plaintiff.*"

And, traveling back still further, it was ruled in *Olcott* vs. *Rathbone,* (5 *Wend.* 494,) *that the owner of a promissory note, endorsed in blank, can make whom he pleases the holder.*

This same point came up in *Banks* vs. *Eastin.—15 Martin's Rep. La.* 291, *N. S.* An action was brought by the endorser of a promissory note against the maker. The petition stated that the instrument sued on was endorsed to the plaintiff, and that the defendant was indebted to him the sum therein expressed. The answer denied that the plaintiff had any interest whatever in the note. And, on the trial, the defendant proved that it did not belong to the plaintiff, but had been placed in his hands for collection. On this evidence the judge nonsuited the plaintiff, and he appealed :

*Porter, J.—*"The evidence given as to want of interest in the plaintiff was excepted to ; and the question is, therefore, presented, *whether,* on a *simple allegation* in the answer, *that the plaintiff is not the owner of the instrument sued on, such inquiry can be gone into?* The blank endorsement makes the bill transferable by the endorsee, and every subsequent holder, by mere delivery ; and so long as the endorsement continues in blank, it makes the bill, or note, payable to bearer. It appears to us, therefore, that whether the plaintiff was the owner of the note sued on, or not, was a question with which the defendant had nothing to do."

In *Brigham* vs. *Mareau,* (*Pick. Rep.* 40,) the court held, that it was no objection to the action that it was brought in the name of Brigham, although it was admitted that it belonged to Peck, the payee.

We think it apparent, from the authorities cited, and the list might be almost indefinitely enlarged, that the court erred in granting the rule on the *fourth ground.*

Nor do we see any reasonable objection to the doctrine, when properly understood and administered. It injures no one. Where the defendant has equitable grounds of defence against the real owner, he cannot be deprived of them by an assignment which is not *bona fide.* But when, by the pleadings, he fails to bring himself within the protection of this exception, the holder of a negotiable note, blank endorsed, or payable to bearer, should be entitled to recover. Nor should the defendant be permitted, in a mere spirit of legal *Quixotism,* to take a tilt against his right. The judgment will form *res adjudicata* against any other person claiming an interest in the instrument.

It is ordered, therefore, that the judgment of the Circuit Court be affirmed upon the question of jurisdiction, in entertaining the motion for a new trial, and also in granting the rule upon the *first ground.*